**Scott P. HAMMOND, Plaintiff,**

v.

**T.J. LITLE AND COMPANY, INC. and Thomas J. Litle, Defendants.**

**Civ. A. No. 88–2450–K.**

United States District Court,
D. Massachusetts.

Dec. 16, 1992.

Scott P. Hammond, pro se.

James W. Nagle, Goodwin, Proctor & Hoar, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Hill & Barlow, Michael D. Weisman, and Robert A. Bertsche (collectively, "Hill & Barlow") counsel for plaintiff Scott P. Hammond ("Hammond"), have moved for leave to withdraw, alleging that Hammond failed to cooperate and disregarded fee obligations to the firm. Hammond opposes the motion.*

For the reasons set forth below, I conclude that Hill & Barlow must be permitted to withdraw.

### I.  Introduction

The opposing evidentiary submissions and the findings and conclusions to be drawn from them are sharply contested.

Hammond retained Hill & Barlow in August of 1990. At that time, Hammond countersigned and returned a copy of a letter addressed to him by Hill & Barlow, specifying the financial terms of the retainer. (Letter from Weisman to Hammond, dated August 16, 1990, Exh. A to Second Weisman Aff.) By countersigning, Hammond indicated that he had read and agreed to the terms. *Id.* at 1. Under the agreement, Hammond was to pay a $10,000 retainer by August 28, 1990 to be applied to charges. The letter also notified Hammond that he would be billed "on a regular basis, normally each month, for both fees and disbursements." *Id.* at 2. Regarding the payment schedule, the countersigned letter states:

> We expect our clients to make payments promptly on receipt of our statements, and in any event within 30 days of the invoice date.... I understand that there may be occasional difficulties in making payment within 30 days, and I will do my best to accommodate your needs in that regard. I should warn you in advance, however, that the firm's fiscal year ends October 31, and I will be constrained to insist that you have no outstanding balance as of that date.

*Id.*

As of March 1991, Hammond was in arrears to Hill & Barlow under the August, 1990 fee agreement. (Second Weisman Aff. ¶ 4.) Hammond and Hill & Barlow then revised their agreement for payment of amounts past due, as well as amounts to be incurred. (Letter from Weisman to Hammond, dated March 28, 1991, Exh. B to Second Weisman Aff.)

Pursuant to the new fee agreement, Hammond was to make payments on March 31, 1991 and April 30, 1991. Hammond made the payment due on March 31 a few days late. (Second Hammond Aff. ¶ 8; Second Weisman Aff. ¶ 5.) Hammond made no payment on April 30. (Second Weisman Aff. ¶ 5.) On June 24, 1991, Hammond paid 25% of the amount he had agreed to pay on April 30. *Id.* In September, 1991, Hammond made a "small payment" to Hill & Barlow that was returned by the bank for insufficient funds. (Second Hammond Aff. ¶ 12.) Hammond has made no payment to Hill & Barlow since

---

* Now before the court are: (1) Hill & Barlow's motion to withdraw (Docket No. 158, filed June 8, 1992), with supporting memorandum (Docket No. 160, filed June 8, 1992) and affidavit (Docket No. 159, filed June 8, 1992); (2) Hammond's opposing memorandum (Docket No. 179, filed June 23, 1992) and affidavit (Docket No. 178, filed June 23, 1992); (3) Hill & Barlow's Reply in Support of Motion for Leave to Withdraw Appearance (Docket No. 167, filed July 2, 1992); (4) Second Affidavit of Michael D. Weisman, and attached exhibits (Docket No. 168, filed July 2, 1992); (5) Plaintiff's Response Memorandum in Support of Opposition to Motion for Leave to Withdraw Appearance (Docket No. 172, filed September 8, 1992); (6) Second Affidavit of Scott P. Hammond (Docket No. 173, filed September 8, 1992); (7) Supplemental Statement of Hill & Barlow in Support of Motion for Leave to Withdraw Appearance (Docket No. 175, filed October 5, 1992); and (8) Plaintiff's Supplemental Statement in Support of Opposition to Motion for Leave to Withdraw Appearance (Docket No. 177, filed October 22, 1992).

October 1991. (Second Weisman Aff. ¶ 5.) According to Hammond, although fees have been incurred, he has not been billed for services rendered since November, 1991. (Second Hammond Aff. ¶ 44.)

Hammond asserts that Hill & Barlow expressly waived the time-performance condition of the March 28, 1991 fee agreement in a telephone conversation on or about April 18, 1991. (Second Hammond Aff. ¶ 9.) Furthermore, Hammond avers, after this alleged waiver, "my financial obligation to the firm was simply to pay the firm, for valid fees and expenses incurred in connection with services rendered, as promptly as I was able." (Second Hammond Aff. ¶ 10.) Hammond's bare assertion of these conclusions is not evidence that will support a finding of waiver, and Hammond does not in any other way proffer evidentiary support for his claim of waiver. Hill & Barlow denies that it waived the time-performance condition of the March 28, 1991 fee agreement and states that Weisman continued to bill Hammond on a monthly basis. Also, Hill & Barlow says Weisman, by telephone, encouraged Hammond to pay his legal bills "as promptly as possible." (Second Weisman Aff. ¶ 6.)

After March 31, 1991, Weisman and Hammond had several conversations about Hammond's failure to pay. (Second Hammond Aff. ¶¶ 11, 13, 14, 15, 17, 18; Second Weisman Aff. ¶ 6.) The parties dispute the content of these discussions. Hammond avers that he disclosed his precarious financial situation to Weisman and offered to seek new counsel, but was discouraged from doing so. (Second Hammond Aff. ¶¶ 11, 18.) Hammond also asserts that although he "felt bad" about his inability to pay Hill & Barlow, he never "stated or otherwise recognized" that he had violated his financial obligations to the firm, nor did he "state or otherwise acknowledge" that he would not object to Hill & Barlow's withdrawal from the case. (Second Hammond Aff. ¶¶ 14, 15, 16, 17.)

Weisman's affidavit flatly contradicts Hammond's. Weisman avers that Hammond did not fully disclose his inability to pay Hill & Barlow, acknowledged that he had violated his financial obligations and promised to pay, told Weisman that he would not object if the firm sought leave to withdraw, and expressed his satisfaction with the work Hill & Barlow had done. (Second Weisman Aff. ¶¶ 6, 7, 8, 9.)

Hammond asserts that he is now able to resume payments to Hill & Barlow for past and future legal costs. (Hammond Aff. ¶ 32–34; Second Hammond Aff. ¶ 45.) His affidavit, however, makes no suggestion that he is able and willing to pay immediately the charges for all services performed before this date.

The case was scheduled for trial on January 27, 1992. Also in January, 1992, Hill & Barlow conducted settlement negotiations on Hammond's behalf. The court granted a continuance because the parties reported that the case was virtually settled. Negotiations failed, however, and the litigation is still pending. A new trial date has not been set, and no oral or written reports are due.

The record contains conflicting sworn statements about the alleged breakdown in the attorney-client relationship from a date preceding the January trial date until June, 1992, when the motion to withdraw was filed. Hill & Barlow aver that Hammond: (1) failed to cooperate with Hill & Barlow, making himself unavailable at critical junctures in case development (Second Weisman Aff. ¶¶ 10, 11); (2) expressed great dissatisfaction with counsel's representation (Second Weisman Aff. ¶ 12); (3) implicitly threatened to sue Hill & Barlow (Second Weisman Aff. ¶ 16); and (4) represented that he would assent to counsel's withdrawal, up until the day the motion was filed (Second Weisman Aff. ¶ 13).

Hammond disputes Hill & Barlow's factual assertions and characterizations, averring that he is well-satisfied with Hill & Barlow's representation and wishes it to continue. (Hammond Aff. ¶¶ 35, 36; Second Hammond Aff. ¶ 30.) According to Hammond, he has been cooperative with counsel, kept appointments, and returned calls promptly. Any unavailability, he contends, was the result of misunderstand-

ings, and was not intentional. (Second Hammond Aff. ¶¶ 20, 21, 22, 25.) Hammond admits that he once expressed dissatisfaction with the manner in which Hill & Barlow handled an aspect of the case (Second Hammond Aff. ¶ 29). On the same day, however, Hammond avers, he informed Hill & Barlow that he "respected [the firm's] counsel, and remained confident in [the firm's] ability to represent [him] effectively, through trial and beyond, without unreasonable difficulty, and desired the firm's continued representation in the case." (Second Hammond Aff. ¶ 30.)

During the week before this motion was filed, Hammond wrote a letter to Hill & Barlow, dated June 4, 1992. (Second Hammond Aff. ¶ 31; Second Weisman Aff. ¶ 13). Hill & Barlow aver that in this letter Hammond agreed to release Hill & Barlow if the firm wished to withdraw. (Second Weisman Aff. ¶ 13.) Hammond, however, disputes this interpretation of his letter, saying that he used the word "release" with the "intention and understanding that I would receive consideration, to be negotiated if I discharged Hill & Barlow to my great detriment." (Second Hammond Aff. ¶ 31.) Neither party has submitted the disputed letter to the court.

Many other allegations and counter-allegations appear in the record. Conflicting details of these submissions need not be resolved by the court at this time, however, for the reasons explained below.

## II. Standard for permitting counsel to withdraw.

■■■ The relationship between attorneys and their clients is contractual. Nevertheless, the terms and effect of a severance of the relationship do not depend solely on findings of breach, or who broke the contract first, or whose breach was more substantial. An attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client. Both attorney and client agree to a relationship between them that bears also upon their respective obligations to the court. Implicit in the attorney-client relationship are mutual obligations of good faith and fair dealing. The

professional relationship, as well as the decision to dissolve it, must be guided, and in some instances is governed by, the court's rules of professional conduct and by the canons and rules of the legal profession applicable to members of the Bar admitted to practice before the court.

The Local Rules of the United States District Court for the District of Massachusetts require that attorneys appearing before this court comply with "the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts," including "those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07, and 3:08 of said court. . . ." LR, D.Mass. 83.6(4)(B) (September 1, 1990, rev. 1/91). Rule 3:07 contains canons and disciplinary rules based mainly on the American Bar Association "Code of Professional Responsibility and Canons of Judicial Ethics" (1970).

■■ Local Rule 83.5.2(c)(1) requires that certain conditions be met for attorneys to withdraw from representing clients in civil actions without leave of the court. In this case, because one of the conditions has not been met—that is, new counsel has not been obtained—Hill & Barlow may withdraw only by leave of the court. *See also* DR 2–110(A)(1) (requiring attorneys to obtain the tribunal's permission to withdraw, if the rules of that tribunal so require).

In cases where permissive withdrawal is sought, "[t]he grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court. . . ." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir.1985) (quoting *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982)), *cert. denied sub nom. Andrews v. Bechtel Corp.*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). Disciplinary Rule 2–110, provides guidance to attorneys seeking to withdraw, as well as to judges deciding whether to permit withdrawal.

[A] lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving

due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules. DR 2–110(A)(2).

Disciplinary Rule 2–110 also outlines specific sets of circumstances in which an attorney may seek permission to withdraw from representation, two of which are relevant to this motion:

(C) Permissive Withdrawal. If DR 2–110(B) [mandatory withdrawal] is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

(1) His client:

. . . . . . . . . .

(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively. . . . [or]

(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

DR 2–110(C)(1)(d), (f).

Hammond argues that (d) is not applicable and (f), though possibly applicable, does not authorize withdrawal because Hammond did not "deliberately disregard" his fee obligations to counsel.

In the exercise of the discretion committed to the court under applicable law, I determine, as explained below, that Hill & Barlow must be allowed to withdraw under both subsections (d) and (f). I take up the latter first.

### III. Deliberate Disregard of Fee Obligations

Counsel is allowed to seek the court's permission to withdraw when the client "deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." DR 2–110(C)(1)(f). I find that Hammond is delinquent in his financial obligations to Hill & Barlow, and has been for a substantial period of time. At issue is whether in failing to pay his legal fees he has "deliberately disregard[ed]" an agreement or obligation to the lawyer [Hill & Barlow] as to expenses or fees," as that phrase is used in DR 2–110.

Neither party has cited, nor am I aware of, any binding authority interpreting DR 2–110(C)(1)(f) in the context of non-payment resulting from financial inability.

The phrase "deliberately disregards," as used in DR 2–110(C)(1)(f) is not precisely defined, either in the text of the rule or elsewhere. "Deliberately," like "intentionally," may signify either (1) acting (or failing to act when there is a duty to act) with a "desire" or "purpose" to "disregard" an obligation, or instead (2) acting (or failing to act when there is a duty to act) with a "knowledge" or "belief" that the obligation is being disregarded by action or inaction. Cf. Restatement (Second) of Torts § 8A (1965); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 8 at 33–34 (5th ed. 1984 & Supp.1988) (explaining the meaning of "intent[ionally]" as commonly used in tort law). It may be argued that "deliberately" differs from "intentionally" by more strongly connoting "desire" or "purpose" to disregard. Ambiguity remains, however, because a client may "deliberately act" to serve some other purpose (for example, giving priority to other obligations when having resources insufficient to make timely payments on both the other obligations and his fee obligations), while only "knowing" or "believing" that the result is to show less regard for the fee obligation.

The parties propose differing interpretations of "deliberate disregard." Hammond argues for a standard limited to willful, premeditated, intentional, and purposeful action or inaction. (Pl.Opp. to Mot. for Leave to Withdraw Appearance at 16, citing Black's Law Dictionary 427 (6th ed. 1990).) Hill & Barlow urges the court to interpret "deliberate disregard" as "knowingly and intelligently fail[ing] to pay a substantial sum for services rendered." (Hill & Barlow's Mem. in Supp. of Mot. for Leave to Withdraw Appearance at 3, quoting Commonwealth v. Roman, 379 Pa.Super. 331, 549 A.2d 1320, 1322 (1988).)

The New York State Bar Association, Committee on Professional Ethics interpreted "deliberate disregard" in a 1989 opinion, in which the Committee posed and answered the following question: "May an attorney withdraw from employment in a litigated matter because of nonpayment of fees where the client is financially unable to make payment?" N.Y. St. B.A. Comm. on Professional Ethics, Op. 598 (February 1, 1989), *reprinted in Natl. Rptr. on Legal Ethics & Prof. Resp.*, NY:Opinions:21 (1989). The Committee noted:

> a client's non-payment of fees because of an inability to pay may in certain circumstances be deemed a "deliberate" breach of the client's obligation to counsel, and therefore, warrant permissive withdrawal from representation by counsel. Such withdrawal will be appropriate in a litigated matter only if the attorney has provided clear notice to the client of the attorney's desire to withdraw, taken reasonable steps to avoid foreseeable prejudice to the client and obtained permission from the tribunal to withdraw....

*Id.* at NY:Opinions:22. The Committee reasons that although an attorney has a responsibility to assure that his withdrawal does not "occur at a time when such withdrawal would give rise to immediate harm to the client," this does not "bar withdrawal where the client may be unable to afford new counsel, even though leaving the client without representation may damage the client's position." *Id.* The Committee concludes:

> a client "deliberately disregards an agreement or obligation" to pay legal fees whenever the failure is conscious rather than inadvertent, and is not *de minimus* in either amount or duration. A client's knowing and substantial failure to satisfy his or her financial obligations to a lawyer would justify the lawyer's withdrawal.... This would be so even where the failure results from inability to pay.

*Id.* at NY:Opinions:23.

Withdrawal, although permissible under DR 2–110(C)(1)(f) where a client has been unable to pay counsel a known obligation, "will not necessarily be appropriate in all such circumstances." *Id.* at NY:Opinions:24. Some of the other factors the Committee suggests ought to be considered are: (1) the amount of work performed and paid for in comparison with the work remaining, (2) fees paid to date, and (3) the likely effect on the client. *Id.*

Virtually the only point on which Hill & Barlow and Hammond agree, relevant to an analysis of what result should be reached in this case under this New York Committee standard, is that Hammond is delinquent in meeting his financial obligations to Hill & Barlow. (Hammond Aff. ¶ 31; Second Weisman Aff. ¶ 20(c).) Although neither party has submitted an accounting of Hammond's arrearage, Hill & Barlow characterizes the amount as "substantial" (Second Weisman Aff. ¶ 20(c)), and Hammond does not contest this. Hill & Barlow asserts that Hammond has failed to give adequate assurance that he can, or ever will be able to, pay his debt previously incurred and finance the foreseeable costs of continuing the litigation. Although Hammond insists to the contrary, he has not proffered any evidence to support his assertion that his financial situation has changed.

There is no specific evidence in the record of the amount of work performed. Given that Hammond does not dispute Hill & Barlow's contention that fees owed are substantial, I find that substantial legal work has been performed to conduct settlement negotiations and prepare the case for trial. Although Hammond also characterizes his financial investment in Hill & Barlow's preparation as "substantial" (Hammond Aff. ¶ 4), he does not dispute that he has paid for only a portion of the services rendered thus far. Nor is there evidence of the dimensions of the legal work remaining in Hammond's case. From proceedings in this case, however, the court is well aware that resumed settlement negotiations, and, if the case is not settled, representation of Hammond at trial (and perhaps on appeal) are likely to require very substantial professional services.

I find that, inevitably, Hammond will be inconvenienced by Hill & Barlow's withdrawal. He has, however, proffered no evidence that he is unable to engage new counsel. Hill & Barlow, moreover, have proffered evidence that I find credible of good faith efforts to accommodate Hammond's financial difficulties.

■ I conclude that I need not determine whether I should hold that a standard precisely like that adopted in the New York Committee opinion quoted above applies in this court. I conclude that when nonpayment extends over a substantial period of time, a client's knowledge of the consequence of less regard for the fee obligation to the lawyer than for the other financial obligations of the client becomes increasingly significant. Continuing failure to overcome obstacles of financial hardship in order to satisfy the obligation may strengthen an inference of the client's lack of due regard for the obligation, thus more strongly supporting a finding of "deliberate disregard." If the client's course of conduct does not include evidence of continuing efforts to find ways to meet the fee obligation, the inference of "deliberate disregard" grows stronger over time. Moreover, it is the client's duty, as part of the obligation of good faith and fair dealing, to cooperate fully and without reservation in aiding the lawyer to serve the client in ways less demanding of the lawyer's time, when that time is not being promptly compensated in accordance with the fee agreement. Due "regard" requires nothing less.

■ I find that Hill & Barlow have fulfilled the firm's professional responsibilities in requesting withdrawal in the circumstances of this case. The firm has assured Hammond that it "will cooperate fully with any new lawyer [he] obtain[s] . . . ." (Letter from Weisman to Hammond, dated June 23, 1992, Exh. E to Second Weisman Aff.) The firm has even "agreed to subordinate its attorney's lien against Hammond for unpaid fees and expenses, to the lien of any successor counsel for that counsel's fees and expenses." (Weisman Aff. ¶ 5.)

Hammond proffers no evidence of Hill & Barlow's alleged express waiver of the March 28, 1991 fee agreement. Likewise, Hammond's estoppel theory and allegations of implied waiver fail. Hill & Barlow argue compellingly that a court's concluding (in circumstances such as those of this case) that the firm's action (or inaction) constituted an implied waiver would penalize the firm for extending a courtesy to a client. If such a rule were adopted and enforced, then in order to protect their interests, attorneys would face a need routinely to consider moving for withdrawal immediately upon a client's falling behind in payment. Yet precipitous requests for leave to withdraw would likely be ethical violations. It is not reasonable to interpret the applicable rules as placing attorneys in such a dilemma, nor would a set of rules so interpreted serve the interests of clients in the long run.

The March, 1991 agreement stands. I find that Hammond, over an extended period of time, has knowingly failed to pay a substantial sum for services rendered and, in doing so, has "deliberately disregard[ed] an agreement or obligation to the lawyer as to expenses or fees," as that phrase is used in DR 2–110(C)(1)(f).

IV. Failure to Cooperate with Counsel

■ The parties' memoranda and affidavits detail Hammond's alleged failure to cooperate with counsel with allegations and counter-allegations of missed meetings, implicitly threatened law suits, misunderstandings, and unreturned telephone calls. The relevant facts are disputed, and the evidence, proffered in the form of contradictory affidavits, is not sufficient to allow this court to make specific findings about many of the disputed details. For this reason, I do not decide the details of causes and extent of responsibility for the irretrievable breakdown in the attorney-client relationship. I do find, however, that such a breakdown has occurred. I find, furthermore, that Hammond's conduct is at least a substantial contributing cause of the breakdown. Hammond's endeavor to force Hill & Barlow to offer "consideration" in return for his consent to withdrawal (Second Hammond Aff. ¶ 31; Letter from Hammond to Weisman, dated June 23, 1992, Exh. D to Second Weisman Aff.), and Hammond's

lack of due regard for fees owed to an expert engaged on his behalf (Letter from Weisman to Hammond, dated September 17, 1992, Exh. A to Supp. Statement of Hill & Barlow; Pl.'s Supp. Statement at 1–2) are illustrations of conduct on his part that was inconsistent with his assertion that he has been at all times responsive and cooperative toward his attorney.

■■■ As stated previously, a client, when engaging counsel, assumes an obligation of good faith and must act with due regard for an attorney's right to be compensated for work done on the client's behalf. The client is not acting in accordance with these obligations when he behaves in a way that creates extra work, for which the client knows there is a substantial risk the attorney will never be compensated. Hammond's actions demonstrate some degree of knowing disregard for his obligations of fair dealing and good faith efforts not to make the attorney-client relationship more costly to the attorney than it would be with a fully cooperative client.

### V. Conclusion

In summary, I conclude that Hill & Barlow must be allowed to withdraw from representation of plaintiff in this case.