**In re Paul ALBERT, Debtor.**

**Norman Goldstein, Norman Goldstein Associates, Inc., Marcy Goldstein, David Harris, George Schneider, Maria Binkowski, Leszek Mejer, and Henrietta Goldstein, Plaintiffs,**

**v.**

**Paul Albert, Defendant.**

**Bankruptcy No. 99–31520.**

**Adversary No. 99–7108.**

United States Bankruptcy Court, S.D. New York, Poughkeepsie Division.

March 21, 2002.

**40**

Stanley R. Goodman, Goodman & Saperstein, Garden City, NY, for plaintiffs.

Norman Goldstein, Pro Se.

## MEMORANDUM DECISION AND ORDER DENYING GOODMAN & SAPERSTEIN'S MOTION TO BE RELIEVED AS COUNSEL

CECELIA G. MORRIS, Bankruptcy Judge.

Counsel for Adversary Proceeding Plaintiffs filed a motion to be relieved as counsel to the Plaintiffs. This Court holds that counsel may not withdraw.

Upon the Notice of Motion and Application dated January 14, 2002, by the Law Offices of Goodman & Saperstein for permission to withdraw as counsel to the Plaintiffs, and the Amended Notice of Motion and Amended Application dated February 25, 2002, and this matter having been properly noticed, and having come on to be heard before this Court on March 5, 2002, and the Law Offices of Goodman & Saperstein, having appeared by Stanley R. Goodman, counsel for the Plaintiffs, and Adversary Proceeding Plaintiff Norman Goldstein having appeared *pro se* in opposition to his attorney's motion, and this Court having held a hearing as to the propriety of the Application to be Relieved as Counsel for Adversary Proceeding Plaintiffs, it is,

Upon due deliberation, and pursuant to the reasons established on the record at the hearing on March 5, 2002, and as more fully set forth below, Goodman & Saperstein's Application to be Relieved as Counsel is hereby DENIED in all respects.

### I. Procedural History

On June 2, 1999, Paul Albert filed a voluntary petition for Chapter 7 bankruptcy. On October 7, 1999, an adversary proceeding was commenced against Debtor Paul Albert by plaintiffs Norman Goldstein, Norman Goldstein Associates, Inc., Marcy Goldstein, David Harris, George Schneider, Maria Binkowski, Leszek Mejer, and Henrietta Goldstein (collectively "Plaintiffs"). Plaintiffs seek a determination by this Court that certain debts Albert allegedly owes to the Plaintiffs should be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). In connection with this non-dischargeability action, and the related underlying state

court matter, Plaintiff's attorney, Stanley Goodman, Esq. of the Law Offices of Goodman & Saperstein ("Goodman") has represented the Plaintiffs since 1996. On November 9, 1999, Defendant Debtor Paul Albert filed an Answer through his attorney at the time, Neil R. Flaum, Esq.

Since the commencement of the adversary proceeding, the parties have engaged in complex motion practice dealing with, *inter alia,* issues of collateral estoppel. The most recent motions resulted in a lengthy decision by this Court denying summary judgment. The parties have discussed with this Court the potential for further extensive dispositive motions in advance of trial. Specifically, on April 18, 2000, Plaintiffs through their counsel filed a Motion for Summary Judgment. Then, on September 18, 2000, Debtor Defendant entered opposition to Plaintiff's motion, and filed a separate Motion to Dismiss and Summary Judgment. On November 14, 2000, further briefing on the motions occurred. On January 23, 2001, the parties were allowed to amend their respective motions. On February 28, 2001 Plaintiffs through their attorneys filed amended submissions in opposition to Debtor Defendant's motions. On August 13, 2001, this Court denied Plaintiff's Summary Judgment on the Second of Action.

Stanley Goodman, Esq. now seeks to withdraw from representation of the Plaintiffs. Goodman filed a Notice of Motion and Application dated January 14, 2002, for permission to withdraw as counsel to the Plaintiffs. Due to repeated non-compliance with this Court's electronic case filing requirements, Goodman did not file these papers himself, rather, he had Debtor Defendant's Counsel, Avrum Rosen, file them on his behalf.

Goodman's original motion dated January 14, 2002 was deficient in several respects and he was permitted to submit an amended motion. For example, the January 14, 2002 motion papers lacked citation to any legal standard and did not include a memorandum of law as required by Bankruptcy Court local rule. S.D.N.Y. LBR 9013–1(b) ("Failure to comply with this subdivision may be deemed sufficient cause for the denial of the motion or the granting of the motion by default.")

Goodman then filed an Amended Notice of Motion and Amended Application dated February 25, 2002. Again, through Goodman's non-compliance with the Southern District of New York Bankruptcy Court's electronic case filing requirements, Goodman had his opposing counsel file motion papers on his behalf.

The application to withdraw was heard by this Court on March 5, 2002, and the Law Offices of Goodman & Saperstein, appeared by Stanley R. Goodman, Esq. counsel for the Plaintiffs. One of the named Plaintiffs, Norman Goldstein ("Goldstein"), appeared *pro se* in opposition to his attorney's motion.

As set forth on the record on March 5, 2002, and as more fully explained below, Goodman's application to withdraw as counsel is denied.

## II. Background

Beginning in 1996 with an action in New York State Supreme Court against Debtor Defendant, Plaintiff's attorney, Stanley Goodman, Esq. of the Law Offices of Goodman & Saperstein has represented the Plaintiffs. There are eight plaintiffs in the adversary proceeding: Norman Goldstein, Norman Goldstein Associates, Inc., Marcy Goldstein, David Harris, George Schneider, Maria Binkowski, Leszek Mejer, and Henrietta Goldstein.

Goodman's relationship with Norman Goldstein and Norman Goldstein Associates, Inc. ("Goldstein entities") extends as

far back as 1986. Since that time, Goodman has always represented the Goldstein entities pursuant to an oral retainer agreement. Goodman alleges as the basis of this motion, *inter alia*, that the Goldstein entities refuse to pay for past and future legal services incurred pursuant to the oral agreement.

The last submissions filed by Plaintiffs were in February 2001. *See supra*. According to Goodman, a meeting was held at Goodman's offices in April 2001 to resolve a fee dispute. (Goodman's Amended Motion, paragraph 12). At that time, a fee reduction was granted by Goodman in return for a partial payment and a promise that the outstanding balance would be liquidated in thirty day. (Goodman's Amended Motion, paragraph 13). According to Goodman the outstanding balance was not liquidated. (Goodman's Amended Motion, paragraph 13). However, Goodman also stated that the Goldstein entities made an additional payment on June 5, 2001. (Goodman's Amended Motion, paragraph 14). Thus, it seems, that the June 5, 2001 payment was the last payment made by the Goldstein entities.

Then Goodman suggested that Goldstein speak directly with Debtor Defendant Albert to see if direct negotiations between the parties could resolve the dispute. In or about October 2001, Goldstein was engaged in direct settlement negotiations with Albert. On November 1, 2001, Goodman sent Goldstein a letter expressing his desire to withdraw from the case. (Goodman's Amended Motion, Exhibit A). After

sending the letter, Goodman had another conversation with Goldstein wherein Goodman was informed that Goldstein was drafting a settlement proposal. (Goodman's Amended Motion, paragraph 18).

On January 14, 2002, nearly eleven months after filing the last submission on behalf of the Plaintiffs, Goodman made the instant motion to withdraw. At the hearing on March 5, 2002, only Norman Goldstein appeared, *pro se*, in opposition to Goodman's motion. Norman Goldstein stated on the record that pursuant to an oral agreement, he originally agreed to pay all of the legal fees incurred on behalf of the Plaintiffs with the exception of those fees to be paid by plaintiff George Schneider.[1] According to Goldstein, he has familial or other long-standing relationships with most of his fellow plaintiffs. Furthermore, at a recent meeting subsequent to the filing of the motion to withdraw, Goldstein assured Goodman that he would be paid.

### III. Discussion

For the purposes of this decision, the Court will focus, *inter alia*, on the Goldstein entities non-payment of legal fees and its effect on Goodman's request to withdraw representation of all of the Plaintiffs. This Court considers Goodman's Application to be Relieved as Counsel for Adversary Proceeding Plaintiffs in the context of both prior decisional law establishing what is "cause" to withdraw and the New York Code of Professional Responsibility.[2]

---

1.  No argument was provided by Goodman as to grounds for withdrawal as might be had against Schneider on the basis of non-payment of legal fees. To the extent that a separate fee agreement exists between Goodman and Schneider no evidence of breach of that agreement has been provided to this Court. Therefore, no findings of cause have been made going to the representation by Good-

man of Schneider pursuant to the separate fee arrangement.

2.  Even though this motion was opposed by only one of the Plaintiffs, it has been held that an attorney may not withdraw from a case on an unopposed motion stating that the client's bill was only partially paid and that the client failed to follow directions; rather, more factu-

## A. Goodman's Grounds for Withdrawal and Goldstein's Response

Upon a reading of Goodman's application, and at oral argument, Goodman urged that the following constitutes grounds to permit withdrawal:

First, Goodman stated that Plaintiffs have failed to pay legal fees. Though the disputed bills were not produced with the motion or at oral argument, Goldstein and Goodman stated that there exists unpaid legal fees in the approximate amount of $5,000 going as far back as six to eight months. (Goodman's Amended Motion, paragraph 19). Tape 2098, Count 5958–5968.

Goldstein responded that the exact amount of the outstanding bill is in dispute. Goldstein argued that the amount owed is closer to $4,800. In addition, an ongoing dispute about fees arose regarding Goldstein's payment of legal fees on behalf of George Schneider, one of the plaintiffs in the adversary. Tape 2098, Count 6440–6444. Goldstein has no familial relationship to this plaintiff, and testified that he never agreed to pay for Schneider's share. Tape 2098, Count 6460–6470. When Goldstein asked if this plaintiff could be taken out of the case, Goodman told him that such action was not possible. According to Goldstein, he has been billed for Schneider's share.

When this Court asked Goodman to produce bills for services rendered, Goodman failed to produce them. Furthermore, in light of the fact that the attorney client relationship is defined by an oral retainer evidence of frequency of billing and payment was essential. None was provided.

Goldstein has not deliberately disregarded the fee agreement. Goldstein testified at the hearing that he agreed at a recent meeting that he intends to and will pay the outstanding bill. By acknowledging that the outstanding bill exists and that it will be paid, Goldstein recognizes that the fee agreement is still in effect.

Second, Goodman stated that the last payment from the Goldstein entities was received eight months ago, and that the Goldstein entities have refused to make any payments for past or future legal work. (Goodman's Amended Motion, paragraph 19). Tape 2098, Count 5958–5964. However, Goldstein testified that he currently has an inability to repay, and has promised Goldstein that he will eventually be paid in the future. Tape 2098, Count 6537–6558. The downturn in the economy has caused Goldstein's corporation, NGA, to suffer substantial losses. Money is currently "tight" for Goldstein. Goldstein has already paid over $60,000 in legal fees to Goodman and Saperstein. Tape 2098, Count 6537–6558. With the exception of this last bill, Goldstein was current in his payments, making regular payments. Tape 2098, Count 6537–6558. Goldstein stated on the record that he has never failed to pay anyone in his life and that Goodman will be paid. Tape 2098, Count 6537–6558.

In addition, according to Goldstein, Goodman promised Goldstein, on several occasions that no additional fees would be incurred in connection with the adversary proceeding. Not surprisingly, Goldstein continued to receive bills for legal services as work continued on. Tape 2098, Count 6508–6529.

Some of the work that Goldstein was billed for was never actually used in the case. A great deal of work was done on

al detail is required and there must be a showing of good cause and reasonable notice. *Isser v. Berg,* 38 Misc.2d 957, 239 N.Y.S.2d

370. Such cause has not been found as is outlined below.

"special research" in excess of $6,000 that was never actually incorporated into work product on the case. Tape 2098, Count 6474–6508.

According to Goldstein, Goodman promised certain legal outcomes that never materialized. Over time, Goldstein became more and more frustrated with Goodman's legal work, which caused him to make comments that he was not going to pay for any additional work. At the hearing however, Goldstein explained that pursuant to recent discussions with Goodman, he acknowledged the importance of Goodman's representation of his interests in the adversary proceeding, and promised to pay Goldstein in the future.

Third, Goodman stated that Plaintiffs have refused to pay for both past and future work. (Goodman's Amended Motion, paragraph 19). Tape 2098, Count 6143–6144. Goldstein asserted that he did not refuse to pay; he currently has an inability to pay but has promised eventual future payment. Tape 2098, Count 6822–6838. In addition, there are outstanding issues between the attorney and the Goldstein entities regarding payment: Goldstein testified that he did not make payments because 1. he was repeatedly promised that no additional legal fees would be incurred; 2. discussions were ongoing on some of the issues in the case; and 3. Goldstein does not have the current ability to pay. Tape 2098, Count 6933–6980.

Fourth, Goodman stated that at this point in time, the Plaintiffs would not be prejudiced by the substitution of counsel because the case is in its early stages and there would be no delay. As a result, he urges, new trial counsel could start fresh with discovery in preparation for trial. (Goodman's Amended Motion, paragraph 20). Tape 2098, Count 6000–6010. However, the possibility exists, and the parties have discussed, additional pre-trial dispositive motions.

Further, Goldstein feels that the matter is too complicated for him to adequately represent himself *pro se*. Goldstein would have to retain new counsel if only to represent plaintiff Norman Goldstein Associates, Inc. In addition, Goldstein feels that there would be a steep learning curve for new counsel that Goodman does not currently face, since he is so well-acquainted with the adversary proceeding already and has been involved in the Albert litigation for approximately six years. Tape 2098, Count 6730–6916. Also, Goldstein asserts that Goodman's attempt at withdrawal damaged any prospect of the two parties reaching a resolution in this case. Prior to the motion, Goldstein was actively negotiating with Paul Albert. Once the motion was filed, Goldstein asserts that settlement negotiations ended and Albert lost interest in settling the matter. Tape 2098, Count 6590–6630.

Fifth, Goodman stated that taking the case to trial would be an extreme burden without any hope of recompense for past or future work. (Goodman's Amended Motion, paragraph 20). Tape 2098, Count 6180. Goodman is owed between $4800–$5000 dollars, but has already been paid in excess of $60,000 for work on the adversary proceeding. Thus, Goodman is currently owed less than ten percent of what he has been paid. In addition, this attorney-client relationship has been ongoing since 1986, and up to this point, regular payments have been made. Goldstein testified that he would eventually repay Goodman. Tape 2098, Count 6822–6838.

Sixth, Goodman stated that at a recent face-to-face meeting, Goldstein reiterated that he was not going to pay any more legal fees in this matter. No payment was made on account of the outstanding statement. (Goodman's Amended Motion,

paragraph 22). In a conversation between the parties two weeks ago, Goldstein informed Goodman that he did not have the current financial ability to repay because of the poor economy, but intends to the pay. Tape 2098, Count 6822–6838.

Seventh, Goodman stated that the Goldstein entities have the ability to pay but no intent to repay, and because the Plaintiffs are not debtors they are not insolvent. (Goodman's Amended Motion, paragraphs 23, 25 and 26) Tape 2098, Count 5970. Goodman further stated that the Goldstein entities have the ability to pay legal fees, but have instead seen fit to deliberately repudiate their agreement with Goodman and Saperstein and have disregarded their obligation with respect to past due legal fees. (See Goodman's Amended Motion, paragraph 26.) As outlined in the preceding paragraphs, Goldstein testified that in a conversation two weeks before the hearing he told Goodman he did not have the current financial ability to repay, but did intend to pay. Tape 2098, Count 6822–6838.

Eighth, Goodman stated that the attorney-client relationship has declined to the point where Goodman & Saperstein can no longer serve the Plaintiffs' needs in this case due to non-payment. Tape 2098, Count 5987–5997. Goldstein testified that he wants Goodman and Saperstein to continue to represent the Plaintiffs and that payment would be made.

This Court finds the following facts, *inter alia*, compelling, and resolves all issues of credibility in favor of Goldstein: that Goodman has been paid approximately $60,000 on a case involving multiple plaintiffs and causes of action; lack of a written retainer agreement; failure to produce documentary evidence to support amounts allegedly owed; Goldstein's testimony that he intends to pay the outstanding balance in the future; Goldstein's testimony that

he intends to pay for future services; no proof that the oral retainer agreement does not provide for delayed payment; Goldstein's testimony that he had not agreed to pay for fees incurred on Schneider's behalf; that Goldstein does not have the ability to pay at this time; that Goodman made repeated assurances that no additional fees would be necessary and that certain outcomes were promised, thereby causing Goldstein's comments about having paid enough.

### B. *"Cause" For Withdrawal*

■ The Bankruptcy Court for the Southern District of New York has adopted a local rule which addresses attorney withdrawal. In order to withdraw, "[a]n attorney who has appeared as attorney of record may withdraw or be replaced only by order of the Court for cause shown." S.D.N.Y. LBR 2090–1(e). The Bankruptcy Court's local rule is an adaptation of S.D.N.Y. Local Civil Rule 1.4 and as such informs the Bankruptcy Court's local rule. Local Civil Rule 1.4 states that an order permitting withdrawal will be granted "only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar." Therefore, in order to be relieved as counsel, a lawyer appearing before this Court must make an application for withdrawal supported by affidavit or otherwise and a showing of satisfactory reasons sufficient to constitute cause for withdrawal. *In re Meyers,* 120 B.R. 751 (Bankr.S.D.N.Y.1990).

A number of courts have held that non-payment of fees alone is insufficient cause for the withdrawal of counsel. *In re Meyers,* 120 B.R. 751 (Bankr.S.D.N.Y.1990); *Colter v. Edsall (In re Edsall),* 89 B.R. 772 (Bankr.N.D.Ind.1988); *In re Pair,* 77 B.R. 976 (Bankr.N.D.Ga.1987); *Kriegsman v.*

*Kriegsman,* 150 N.J.Super. 474, 375 A.2d 1253 (App.Div.1977).

Cause for withdrawal has been found, however, where in addition to nonpayment of fees, counsel has been the object of hostile conduct by the client, *Holmes v. Y.J.A. Realty Corp.,* 128 A.D.2d 482, 513 N.Y.S.2d 415 (1st Dep't 1987), where the attorney-client relationship has become unproductive, *Kolomick v. Kolomick,* 133 A.D.2d 69, 518 N.Y.S.2d 413 (2d Dep't 1987), and where there has been a breach of trust on the part of the client or a challenge to the attorney's loyalty. *Hunkins v. Lake Placid Vacation Corp.,* 120 A.D.2d 199, 508 N.Y.S.2d 335 (3d Dep't 1986). *In re Meyers,* 120 B.R. 751 (Bankr. S.D.N.Y.1990).

■■■ That Goodman has not received prompt payment for legal services is not grounds for permitting withdrawal. *In re Meyers,* 120 B.R. 751 (Bankr.S.D.N.Y. 1990). An attorney who undertakes to represent a client assumes obligations towards his client which are not excused merely because the client is unable to pay fees demanded by the attorney. *In re Meyers,* 120 B.R. 751 (Bankr.S.D.N.Y. 1990); *Pair,* 77 B.R. at 978, citing, *Kriegsman v. Kriegsman,* 150 N.J.Super. 474, 375 A.2d 1253. A motion for withdrawal made by an attorney who has not received full payment may be denied where this will not impose an unreasonable financial burden. *In re Meyers,* 120 B.R. 751 (Bankr. S.D.N.Y.1990); *Edsall,* 89 B.R. at 776.

This Court finds that there has been no allegation that counsel has been the object of hostile conduct by the client, nor, that there has been a breach of trust on the part of the client or a challenge to the attorney's loyalty, nor has there been any credible proof that the attorney-client relationship has become unproductive.

This Court further finds that continued representation will not impose an unrea-

sonable financial burden to Goodman & Saperstein. Goodman has already been paid approximately $60,000 and Goldstein has stated on the record that he intends to pay his legal bills. These two facts are significant for several reasons. The amount presently unpaid is less than ten percent of what has already been paid by the Goldstein entities. Further, the amount paid is for services rendered by Goodman that have enabled him to gain a comprehensive knowledge of the case. At the hearing, the Court found that Goldstein recognized and appreciated the sizeable investment of money he has already devoted to his attorney's developing understanding. Furthermore, there possibly remains some discovery, additional dispositive motions (building on the substantial motion practice that has occurred thus far), and possibly a trial involving complicated facts and issues of law. In light of the present procedural posture of the case, amounts paid by the Goldstein entities thus far compared to what is owed, and Goodman's comprehensive knowledge of the case, this Court finds that continued representation will not amount to an unreasonable financial burden but permitting withdrawal in light of the above factors would result in undue prejudice to the Plaintiffs. *Spadola v. New York City Transit Authority,* No. 00–Civ–3262, 2002 WL 59423, at *1 (S.D.N.Y. Jan. 16, 2002).

Therefore, as stated on the record and under the prior decisions dealing with "cause" for withdrawal, this Court finds that cause does not exist to permit Goodman's withdrawal.

## C. *New York Code of Professional Responsibility*

■■■ Although the Model Code "was drafted solely for its use in disciplinary proceedings and cannot by itself serve as a

basis for granting a motion to withdraw as counsel," the Second Circuit has stated that "the Model Code provides guidance for the court as to what constitutes 'good cause' to grant leave to withdraw as counsel." *Whiting v. Lacara*, 187 F.3d 317 (2d Cir.1999); *Brown v. National Survival Games, Inc.*, No. 91–CV–221, 1994 WL 660533, at *4 n. 1 (N.D.N.Y. November 18, 1994) (citing *Armstrong v. McAlpin*, 625 F.2d 433, 446 n. 26 (2d Cir.1980), *vacated on other grounds*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981)); see also *Joseph Brenner Assocs. v. Starmaker Entertainment, Inc.*, 82 F.3d 55, 57 (2d Cir.1996) (citing New York implementation of Model Code in affirming district court's decision granting counsel's withdrawal motion).

Under the New York Code of Professional Responsibility, withdrawal of representation by an attorney "should be made only on the basis of compelling circumstances." Ethical Consideration 2–32 of the New York Code of Professional Responsibility. Where such circumstances exist, a decision by a lawyer to withdraw will be proper. However, when a matter is pending before a tribunal from which the attorney intends to withdraw representation, the attorney must "comply with the rules of the tribunal regarding withdrawal," and receive the tribunal's permission before withdrawing. EC 2–32; DR 2–110(A)(1) of the N.Y.Code of Professional Responsibility.

New York Disciplinary Rule 2–110(C)(1)(f) states that, subject to D.R. 2–110(A), permissive withdrawal is appropriate "if withdrawal can be accomplished without material adverse effect on the interests of the client, or if (1.)[t]he client: (f.) [d]eliberately disregards an agreement or obligation to the lawyer as to expenses or fees." The denial of this motion is consistent with the New York Code of Professional Responsibility DR 2–110(C)(1)(f).

■ The disciplinary rules provide for permissive withdrawal where there has been a deliberate disregard of a fee agreement by a client. Numerous courts have dealt with the issue of withdrawal where it is alleged that clients deliberately disregarded fee agreements. *In re Meyers*, 120 B.R. 751 (Bankr.S.D.N.Y.1990); *Statue of Liberty–Ellis Island Found., Inc.*, 110 F.R.D. 395 (S.D.N.Y.1986) (law firm entitled to be relieved from representation of client who had not cooperated or paid); *Brown v. National Survival Games*, No. 91–CV–221, 1994 WL 660533 (N.D.N.Y. Nov. 18, 1994) (granting leave to withdraw where party deliberately disregarded obligation to pay attorney's fees and fails to cooperate with attorneys).

■ Whether to grant or deny such a motion falls to the sound discretion of the trial court. *Id.*, at *2 (citing *Ohntrup v. Firearms Center, Inc.*, 802 F.2d 676, 679 (3d Cir.1986)). *See, also, McGuire v. Wilson*, 735 F.Supp. 83, 84 (S.D.N.Y.1990) (withdrawal permitted where "clients deliberately disregarded fee arrangements"); *Farr Man Coffee, Inc. v. M/S Bernhard S*, No. 87 CIV. 1267, 1989 WL 31529, at *1 (S.D.N.Y. March 28, 1989) (refusal to pay attorney sufficient reason to allow withdrawal); *Boyle v. Revici*, No. 83 CIV. 8997, 1987 WL 28707, at *1 (S.D.N.Y. Dec. 16, 1987) (failure to pay $25,000 attorney's fees owed for several months indicates deliberate disregard of obligation to pay fees, and justifies withdrawal); *Boucher v. Sears*, No. 89–CV–1353, 1995 WL 283742, at *15 (N.D.N.Y. May 8, 1995).

The meaning of "deliberately disregards" as stated in DR 2–110(C)(1)(f) is not clearly defined. *Kelley Metal Trading Co. v. Al–Jon/United*, No. 92–4116, 1994 WL 413921, at *2, 1994 U.S. Dist. LEXIS 11163, at *5 (D.Kan. July 14, 1994). In

*Hammond v. T.J. Litle and Co., Inc.,* 809 F.Supp. 156 (D.Mass.1992), the court examined the meaning of this phrase. The court provided the following guidance:

> When nonpayment extends over a substantial period of time, a client's knowledge of the consequence of less regard for the fee obligation to the lawyer than for the other financial obligations of the client becomes increasingly significant. Continuing failure to overcome obstacles of financial hardship in order to satisfy the obligation may strengthen an inference of the client's lack of due regard for the obligation, thus more strongly supporting a finding of "deliberate disregard." If the client's course of conduct does not include evidence of continuing efforts to find ways to meet the fee obligation, the inference of "deliberate disregard" grows stronger over time. Moreover, it is the client's duty, as part of the obligation of good faith and fair dealing, to cooperate fully and without reservation in aiding the lawyer to serve the client in ways less demanding of the lawyer's time, when that time is not being promptly compensated in accordance with the fee agreement. Due "regard" requires nothing less.

*Id.* at 162.

■ At this point in time, this Court finds that Goldstein has not deliberately disregarded an agreement for expenses and fees. Unlike in *Boyle v. Revici,* 1987 WL 28707, where the attorneys sought withdrawal because the clients owed them $25,000 for several months, and where even after repeated requests, the clients did not assure the attorneys that the $25,000 or amounts due for future work would be paid at any time, Goldstein has stated on the record that he intends to pay.

The critical factor here of course is the non-payment by the Goldstein entities.

Goodman argues that Goldstein can pay and simply refuses, while Goldstein says he has simply been unable to come up with the necessary funds.

This Court can appreciate the financial problems being experienced by the Goldstein entities, but the Court also recognizes the financial problems caused to plaintiffs' counsel by this litigation. In comparison to what Goldstein says he has paid, the amount in question is small and has not been pending for very long. Although additional funds will be necessary to complete this lawsuit, Goldstein has given his assurance that he will be able to pay the future expenses.

In reaching the conclusion to deny Goodman's request to withdraw, this Court has attempted to consider the interests of all those affected, including the Goldstein entities, all of the plaintiffs, their counsel, the defendant and this Court.

■ Goodman alleges a deliberate violation of the fee agreement; counsel's complaint is that the Goldstein entities have failed to remain current with past fee payments and have threatened to not make future payments. However, a denial of the motion serves to effectuate the agreement between the parties. *In re Meyers,* 120 B.R. 751 (Bankr.S.D.N.Y. 1990). In New York, agreements between attorneys and clients are construed in a manner which is most favorable for the client. *In re Meyers,* 120 B.R. 751 (Bankr. S.D.N.Y.1990); *Shaw v. Manufacturers Hanover Trust Co.,* 68 N.Y.2d 172, 499 N.E.2d 864, 507 N.Y.S.2d 610 (1986); *Jacobson v. Sassower,* 66 N.Y.2d 991, 489 N.E.2d 1283, 499 N.Y.S.2d 381 (1985); *Greenberg v. Bar Steel Construction Corp.,* 22 N.Y.2d 210, 239 N.E.2d 343, 292 N.Y.S.2d 404 (1968); *In re B–T Productions, Inc.,* 104 B.R. 596 (Bankr.W.D.N.Y. 1989). As the court of appeals reaffirmed

in *Shaw*, although contracts are generally construed against the drafter, as a matter of public policy, courts give particular scrutiny to fee arrangements between attorneys and clients, "casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients." *Shaw*, 507 N.Y.S.2d at 612, 499 N.E.2d 864.

■ The burden should be no different where, as here, there is no written retainer agreement. No showing has been made that the Plaintiffs were informed, let alone understood, or reasonably should have understood, the terms of billing and payment. Indeed, Goodman does not contend that the oral agreement allowed his firm to withdraw on the happening of the events it now advances as grounds for its withdrawal. In the absence of an express provision for the withdrawal of counsel, the construction of the agreement most favorable to the client is that representation was to continue until the conclusion of the case. *In re Meyers*, 120 B.R. 751 (Bankr. S.D.N.Y.1990). *But see, Federal Home Loan Mortg. Corp. v. 41–50 78th St. Corp.*, No. 92–CV–5692, 1997 WL 177862, 1997 U.S. Dist. LEXIS 23948 (E.D.N.Y. April 4, 1997).

■ Moreover, as the court in *Hammond v. T.J. Litle & Co.*, 809 F.Supp. 156 (D.Mass.1992) suggested, "the terms and effect of a severance of the relationship [between attorneys and clients] do not depend solely on findings of breach, or who broke the contract first, or whose breach was more substantial." *Id.*, 809 F.Supp. at 159. Indeed, the court acknowledged that withdrawal for failure to pay a fee "will not necessarily be appropriate in all ... circumstances." *Id.* at 161 (citations and internal quotation marks omitted). Thus, the Court may also consider (1) the amount of work performed and paid for in comparison with the work remaining, (2) fees paid to date, and (3) the likely effect on the client. *Hasbro, Inc. v. Serafino*, 966 F.Supp. 108.

Here, given the particular mix of factors cited above, at this time, the Court cannot find that the Goldstein entities' failure to pay the fees is deliberate in the same sense as it was in *Hammond*. First, while the amount of unpaid work is not very substantial, the Goldstein entities have paid significant fees to date and would simply be lost in the maze of litigation were Plaintiffs unrepresented. Moreover, the Court is not convinced that any nonfinancial differences between Goldstein and Goodman are irreconcilable enough at this time to support withdrawal. Further, the effect of Goodman's withdrawal on Goldstein would be grievous. It would be impossible, if not unwise, for Goldstein to represent himself in the instant litigation, which has been both heated and sophisticated.

Finally, Goodman seeks to withdraw as counsel not only for Goldstein, but for a corporate plaintiff controlled by Goldstein. In this district, it is the rule that corporations cannot litigate *pro se*. Were the Court to allow Goodman to withdraw, the corporate plaintiff would have to either immediately retain substitute counsel or possibly default. While the Court is not able at this time to measure the consequences of default judgments against plaintiff corporations, it is not ready to engender that result. Nor does the Court believe it sensible to allow Goodman to withdraw as counsel for Goldstein, but remain counsel to the corporation.

Furthermore, this Court finds that withdrawal cannot be accomplished without material adverse effect on the interests of the Plaintiffs. In fact, according to Goldstein, negative effects relating to this withdrawal issue have already occurred as evi-

denced by scuttled settlement negotiations between himself and Albert.

Therefore, as stated on the record and under the standards set forth by New York Disciplinary Rule 2–110(C)(1)(f), this Court finds that permissive withdrawal is not appropriate at this time.

### D. Summary

■ Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation. *United States v. Revere Armored, Inc.,* No. 97–6112, 1997 WL 794460, 1997 U.S.App. LEXIS 36364 (2d Cir. December 30, 1997). Thus Goodman knew or should have known of the risk that, once he was counsel of record for Plaintiffs, he could be required to continue in that representation whether or not his fees were being paid. *Id.* That he took that risk and has temporarily gone without pay is unfortunate, but not inequitable. *Id.*

Goodman has not made a sufficient showing of the Plaintiff's purported financial delinquency to warrant granting of the motion. *Rophaiel v. Alken Murray Corp.,* 94 Civ. 9064, 1996 WL 306457, 1996 U.S. Dist. LEXIS 7796 (S.D.N.Y. June 6, 1996). As an initial matter, it is not clear from Goodman's submissions how much of the approximately $5,000 owed by Plaintiffs is attributable to work on this case or amounts owed by the Goldstein entities on another case or by another plaintiff. *Id.* The question is whether the Goldstein entities have met, or are in the process of meeting, their financial obligations incurred in connection with this case. If they are, there is no basis for Goodman's withdrawal. *Id.*

Goodman has failed to convince this Court that the Plaintiffs are truly unwilling to fulfill those payment obligations. *Id.* The proof on this point consists of a controverted assertion by Goodman that Goldstein has said that he will no longer pay Goodman's fees. *Id.* In light of the fact that there exists an oral retainer, this is not enough to justify withdrawal at this time. *Id.* Although Goldstein indicates that he may have stated at one point that he would not pay, he has since retracted that statement and has unequivocally stated on the record that pursuant to a recent meeting with Goodman, he will pay. Also, according to Goodman, the Goldstein entities have had very successful businesses (e.g. BG Capital, and Norman Goldstein Associates, Inc.) and can afford to pay. *Id.* If it is Goodman's position that the Goldstein entities will not pay, more substantial evidence of this fact is required, because it was Goldstein's testimony that he has paid considerable sums, intends to pay but is financially strapped at the moment.

■ I am further influenced by the litigation delay that would occur if the firm were permitted to withdraw at this time. *Id.* In addressing motions to withdraw as counsel, district courts have typically considered whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." *Brown v. National Survival Games, Inc.,* No. 91–CV–221, 1994 WL 660533 at *3, 1994 U.S. Dist. LEXIS 16572 (N.D.N.Y. Nov. 18, 1994). Due to the complexity of the motions to date, and those that the Court is advised are to come, withdrawal at this time would cause undue and prejudicial delay.

Having heard the arguments of counsel, the Court determines that i) Goodman has not shown satisfactory reasons warranting withdrawal as counsel of record, and ii) that Plaintiffs would be unduly prejudiced by counsel's withdrawal at this stage of litigation.

### *IV. Conclusion*

After due deliberation, and pursuant to the record established at the hearing on March 5, 2002, and as more fully set forth above, Goodman & Saperstein's Application to be Relieved as Counsel is hereby DENIED in all respects. An adjourned pre-trial conference is scheduled for May 7, 2002, at 11:30 a.m.

SO ORDERED.