**Theodore STAIR, Individually; Theodore Stair, an Officer, Director, and Shareholder of American Virgin Enterprises, Ltd., Derivatively on Behalf of American Virgin Enterprises, Inc.; and Theodore Stair, a Member of Sirius Development, LLC, Derivatively on Behalf of Sirius Development, LLC, Plaintiffs,**

v.

**Rory CALHOUN, John Hanrahan, Robert E. Parella, and H. Linwood Gilbert, Defendants.**

No. 07–CV–3906 (JFB)(ETB).

United States District Court,
E.D. New York.

June 1, 2010.

Marshall B. Bellovin of Ballon, Stoll, Bader & Nadler, P.C., New York, NY, for Plaintiffs.

Theodore Stair, pro se.

Derek Adam McNally and James W. Kennedy, Esqs., of Kennedy Johnson Gallagher, LLC, New York, NY, for the defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge:

Plaintiffs' counsel Ballon Stoll Bader & Nadler, P.C. ("Ballon Stoll"), brings the instant motion to withdraw as counsel to plaintiffs in this action and a motion for a retaining and charging lien under New York law. Plaintiff Theodore Stair has filed opposition to the motion to withdraw. For the reasons discussed below, plaintiffs' counsel's motion to withdraw is granted, and the Court also grants plaintiffs' counsel a charging lien, but denies the motion for a retaining lien.

## I. BACKGROUND

The Court assumes familiarity with the facts of this case, as set forth in detail in the Court's Memorandum and Order dated March 23, 2009, 2009 WL 792189 and the Memorandum and Order dated October 8,

2009. Plaintiffs filed the initial complaint in this action on September 18, 2007. By Memorandum and Order dated March 23, 2009, the Court, *inter alia*, granted defendants Calhoun, Hanrahan, Parella, Gilbert, and TRex St. John LLC's motion to dismiss Count III of the complaint for failure to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs then filed a first amended complaint on April 30, 2009. On May 22, 2009, a stipulation was so ordered by the Court, in which plaintiffs agreed to delete any reference to former defendant T–Rex St. John LLC, against whom all claims were dismissed pursuant to the Court's Memorandum and Order dated March 23, 2009. On May 27, 2009, plaintiffs filed the second amended complaint, in accordance with the May 22, 2009 stipulation. On June 23, 2009, defendants Calhoun and Hanrahan filed a motion to dismiss Count III of the second amended complaint. By Memorandum and Order dated October 8, 2009, the Court granted the motion to dismiss Count III with respect to defendant Hanrahan but denied the motion with respect to defendant Calhoun.

By letter dated October 26, 2009, plaintiffs' counsel requested a conference in anticipation of filing a motion to withdraw as counsel to plaintiffs in the instant action. By Order to Show Cause dated December 4, 2009, Marshall B. Bellovin of Ballon Stoll Bader & Nadler, P.C. moved to withdraw Ballon Stoll as counsel to plaintiffs in this action. According to the affirmation submitted in support of the Order to Show Cause, Mr. Stair entered into a retainer agreement with Ballon Stoll on November 14, 2006, to receive representation on a shareholder dilution matter. (Bellovin Affirm. ¶¶ 2–3.) The parties agreed that Mr. Stair would be billed at an hourly rate for the work performed. (*Id.* ¶ 4.) Mr. Stair was sent monthly state-

ments, to which he did not object, that listed the hours worked by each attorney on his matter, as well as relevant billing rates. (*Id.* ¶ 5.) Mr. Stair has not made any payment toward his outstanding legal balance with Ballon Stoll since March 12, 2008. (*Id.* ¶ 16.) Mr. Stair has not paid roughly $58,676.85 in legal fees and expenses. (*Id.* ¶ 18.) The firm has made numerous attempts, by email, telephone, and letter, to obtain payment from Mr. Stair. (*Id.* ¶¶ 6–7, 9–11.) The firm also informed Mr. Stair that his failure to make the requested payment would result in the firm making a motion to withdraw as attorney to plaintiffs in this case. (*Id.* ¶ 14.) The firm has also represented that, due to the outstanding bills, it has become impossible for the firm to continue its representation of plaintiffs in this matter. (*Id.* ¶ 17.) Ballon Stoll also requested a charging and retaining lien.

On January 6, 2010, plaintiff Theodore Stair submitted opposition to the motion to withdraw. Mr. Stair contends that he is owed a substantial amount of money as the result of an American Virgin Enterprises, Ltd. settlement in the U.S. Virgin Islands. (Stair Opp. at 2.) He does not dispute that he has failed to pay Ballon Stoll for the outstanding bills. (*Id.*) On January 12, 2010, Ballon Stoll submitted its reply. On January 20, 2010, defendants submitted a letter and declaration, "correcting certain fact misstatements made by plaintiff in his letter opposition." (Letter to Judge Bianco from James W. Kennedy, Jan. 20, 2010.) The Court has fully considered the submissions of all parties.

## II. DISCUSSION

Plaintiffs' counsel has filed a motion to withdraw as counsel, and requests that a retaining and charging lien be fixed. Plaintiff opposes these motions. The Court addresses each motion in turn and,

for the reasons discussed below, grants plaintiffs' counsel's motions to withdraw and for a charging lien but denies the motion for a retaining lien.

### A. Motion to Withdraw

Ballon Stoll moves to withdraw as attorney to plaintiffs in this action due to plaintiffs' failure to pay $58,676.85 in legal fees to date. Plaintiff Stair opposes the motion; he contends that he is due money pursuant to a settlement in the U.S. Virgin Islands and that he intends to use the settlement proceeds to pay his legal fees.[1] For the reasons contained herein, the Court grants Ballon Stoll's motion to withdraw.

 Plaintiffs' counsel brings the instant motion to withdraw pursuant to Eastern District Local Rule 1.4. United States District Court for the Eastern District of New York Local Rule 1.4 provides that:

An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

*Id.* Whether to grant or deny a motion to withdraw as counsel "falls to the sound discretion of the trial court." *In re Albert,* 277 B.R. 38, 47 (Bankr.S.D.N.Y.2002) (citing *Brown v. Nat'l Survival Games,* No. 91–CV–221, 1994 WL 660533, at *2 (N.D.N.Y. Nov. 18, 1994)). The Court recognizes that the mere "[n]onpayment of legal fees, without more, is not usually a

sufficient basis to permit an attorney to withdraw from representation." *United States v. Parker,* 439 F.3d 81, 104 (2d Cir.2006) (quoting *In re Albert,* 277 B.R. at 50). The Second Circuit has, however, acknowledged that, under certain circumstances, "[a] client's refusal to pay attorney's fees may constitute 'good cause' to withdraw." *Id.* (quoting *McGuire v. Wilson,* 735 F.Supp. 83, 84 (S.D.N.Y.1990)). For example, a significant period of nonpayment of a substantial fee may justify withdrawal:

When nonpayment extends over a substantial period of time, a client's knowledge of the consequence of less regard for the fee obligation to the lawyer than for the other financial obligations of the client becomes increasingly significant. Continuing failure to overcome obstacles of financial hardship in order to satisfy the obligation may strengthen an inference of the client's lack of due regard for the obligation, thus more strongly supporting a finding of "deliberate disregard." If the client's course of conduct does not include evidence of continuing efforts to find ways to meet the fee obligation, the inference of "deliberate disregard" grows stronger over time. Moreover, it is the client's duty, as part of the obligation of good faith and fair dealing, to cooperate fully and without reservation in aiding the lawyer to serve the client in ways less demanding of the lawyer's time, when that time is not being promptly compensated in accordance with the fee agreement. Due "regard" requires nothing less.

*In re Albert,* 277 B.R. at 48 (quoting *Hammond v. T.J. Litle & Co., Inc.,* 809 F.Supp. 156, 162 (D.Mass.1992)). Here, according to the affidavit submitted by plaintiffs'

---

**1.** Defendants dispute whether plaintiff Stair is owed any outstanding money due to this settlement. Because the Court grants the motion to withdraw, it need not determine whether Mr. Stair is owed any outstanding funds from the U.S. Virgin Islands settlement.

counsel, the facts of which are undisputed by plaintiff's opposition, Mr. Stair's account receivable balance for unpaid legal fees is $57,715.07. (Bellovin Aff. ¶ 18.) He further owes $961.78 in unpaid expenses. (*Id.*) Thus, the total amount due by Mr. Stair to Ballon Stoll is $58,676.85. (*Id.*) Mr. Stair has not made any payment toward his outstanding legal balance since March 12, 2008. (*Id.* ¶ 16.) Ballon Stoll has made several attempts "to obtain payment from Mr. Stair since October 19, 2007, to no avail." (*Id.* ¶ 8.) The Court thus finds that Mr. Stair has deliberately disregarded his obligation to pay his legal fees that are due and owing to Ballon Stoll. *Cf. In re Albert,* 277 B.R. at 48 ("In comparison to what Goldstein says he has paid, the amount in question is small and has not been pending for very long.").

■ Failure to pay legal fees has been found to be a legitimate ground for granting a motion to withdraw by several courts in this Circuit. *See, e.g., Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* 464 F.Supp.2d 164, 166 (E.D.N.Y.2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4." (collecting cases)); *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.,* No. 01 Civ. 2950(DAB), 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005) (" 'Satisfactory reasons' include failure to pay legal fees, a client's lack of cooperation—including lack of communication with counsel, and the existence of an irreconcilable conflict between attorney and client." (internal quotation marks and citations omitted)); *Cower v. Albany Law Sch. of Union Univ.,* No. 04 Civ. 0643(DAB), 2005 WL 1606057, at *5 (S.D.N.Y. July 8, 2005) ("It is well settled that nonpayment of fees is a legitimate ground for granting counsel's motion to withdraw." (citation omitted)); *HCC, Inc. v. R H & M Mach. Co.,* No. 96 Civ. 4920, 1998 WL 411313, at *1 (S.D.N.Y. July 20, 1998) ("It is well-settled that non-payment of fees is a valid basis for granting counsel's motion to withdraw."); *Emile v. Browner,* No. 95 Civ. 3836, 1996 WL 724715, at *1 (S.D.N.Y. Dec. 17, 1996) ("When a client fails to pay legal fees, fails to communicate or cooperate with the attorney, ... and the attorney-client relationship has broken down, these are more than sufficient reasons for counsel to be relieved."). A court determining whether to grant a motion to withdraw as counsel may also consider whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." *Whiting v. Lacara,* 187 F.3d 317, 320–21 (2d Cir.1999) (quoting *Brown,* 1994 WL 660533, at *3). The Court may also examine likely prejudice to the client, whether the motion is opposed, and whether the unpaid representation has become a severe financial hardship to the firm. *See Team Obsolete Ltd.,* 464 F.Supp.2d at 166–67.

■ Plaintiff acknowledges that he has not paid the outstanding balance on his account with Ballon Stoll. (Stair's Opp. at 2–3.) The unpaid balance far exceeds the amounts of any payments previously made by plaintiff to Ballon Stoll. (*See* Order to Show Cause Ex. B.) Ballon Stoll has made several efforts to obtain payment from plaintiff and alerted plaintiff of its intention to withdraw if payment was not received. The Court further notes that withdrawal at this stage will not significantly prejudice plaintiffs because the litigation has only passed the motion to dismiss stage. It does not appear that the parties have conducted discovery yet. Thus, although Mr. Stair cannot bring a derivative suit *pro se, see, e.g., Phillips v. Tobin,* 548 F.2d 408, 411–12 (2d Cir.1976), he can represent himself on any individual claims he is asserting. Mr. Stair can also hire new counsel without any materially ad-

verse effect on the litigation. Ballon Stoll has further represented that "[d]ue to the outstanding bills, it has become impossible for [the firm] to continue [its] representation of the plaintiff." (*Id.* ¶ 17.)[2] Thus, in light of Ballon Stoll's representations to the Court regarding plaintiff's failure to pay legal fees already incurred, the Court grants plaintiffs' counsel's motion to withdraw.

This ruling is consistent with the New York Rules of Professional Conduct, the Eastern District Local Rules, and the guidance of the Professional Ethics Committee of the New York State Bar Association. The New York Rules of Professional Conduct permit a lawyer to withdraw if the client "deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." N.Y. Rules of Professional Conduct, Rule 1.16(c)(5). A New York State Bar Association, Committee on Professional Ethics Opinion has interpreted "deliberate disregard" as follows:

> a client's non-payment of fees because of an inability to pay may in certain circumstances be deemed a "deliberate" breach of the client's obligation to counsel, and therefore, warrant permissive withdrawal from representation by counsel. Such withdrawal will be appropriate in a litigated matter only if the attorney has provided clear notice to the client of the attorney's desire to withdraw, taken reasonable steps to avoid foreseeable prejudice to the client and obtained permission from the tribunal to withdraw . . . .

N.Y. State Bar Assoc. Comm. on Prof'l Ethics, Opinion number 598, at 2 (February 1, 1989), *available at* http://www.nysba.org/AM/Template.cfm?Section=Ethics_Opinions&TEMPLATE=/CM/ContentDisplay.cfm&CONTENTID=18546. The Committee reasoned that although an attorney has a responsibility to assure that his withdrawal does not "occur at a time when such withdrawal would give rise to immediate harm to the client," this does not "bar withdrawal where the client may be unable to afford new counsel, even though leaving the client without representation may damage the client's position." *Id.* The Committee concludes:

> a client "deliberately disregards an agreement or obligation" to pay legal fees whenever the failure is conscious rather than inadvertent, and is not *de minimus* [sp] in either amount or duration. A client's knowing and substantial failure to satisfy his or her financial obligations to a lawyer would justify the lawyer's withdrawal. . . . This would be so even where the failure results from inability to pay.

*Id.* at 3. In the instant case, although caused by an alleged inability to pay, Mr. Stair's failure to fulfill his financial obligations to Ballon Stoll is both knowing and substantial in amount and duration. As discussed *supra*, Ballon Stoll has presented satisfactory reasons for withdrawal. Specifically, Mr. Stair has failed to pay a substantial amount of his legal fees for over two years. Accordingly, for the reasons discussed above, Ballon Stoll's motion

---

**2.** The Court further notes that the retainer agreement signed by Mr. Stair upon retaining Ballon Stoll as counsel for this suit states: "Additionally, the relationship of attorney and client is a privileged one, and you understand that our ability to represent you depends on your willingness to communicate with us openly and completely and that in rendering our professional judgments and guidance, we shall rely on the accuracy of your communications . . . . Further, if satisfactory financial arrangement cannot be made regarding our ongoing services, we would not wish to continue as counsel." (Order to Show Cause Ex. A.)

to withdraw as counsel to plaintiffs in this action is granted.

### B. Motion for a Charging and Retaining Lien

Plaintiffs' counsel also filed a motion for a charging lien and a retaining lien. For the reasons discussed below, the Court determines that plaintiffs' counsel is entitled to a charging lien, but not a retaining lien.

#### 1. Entitlement to a Charging Lien

 Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services. *See* N.Y. Judiciary Law § 475. The Second Circuit has explained the rationale behind the charging lien:

New York's statutory charging lien, *see* N.Y. Judiciary Law § 475 (McKinney 1983), is a device to protect counsel against "the knavery of his client," whereby through his effort, the attorney acquires an interest in the client's cause of action. *In re City of New York*, 5 N.Y.2d 300, 307, 184 N.Y.S.2d 585, 157 N.E.2d 587 (1959). The lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence "should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures." *Williams v. Ingersoll*, 89 N.Y. 508, 517 (1882).

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir.2001). Specifically, Section 475 of the New York Judiciary Law provides:

From the commencement of an action ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which at-

taches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475. The Second Circuit has made clear that Section 475 governs attorneys' charging liens in federal courts sitting in New York, and such liens are "enforceable in federal courts in accordance with its interpretation by New York courts." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir.1998) (internal quotation marks and citations omitted). In order to establish a lien under Section 475, "there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney." *Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226(NRB), 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005). Further, attorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without "good cause" and is not discharged for "good cause." *See, e.g., McDermott v. Great Am. Alliance Ins. Co.*, No. 5:02 Civ. 0607 (NAM/DEP), 2006 WL 2038452, at *3 (N.D.N.Y. July 18, 2006); *Hill v. Baxter*, No. 98 Civ. 4314(SJF)(ASC), 2005 WL 465429, at *2 (E.D.N.Y. Feb. 7, 2005); *Petition of Harley & Browne*, 957 F.Supp. 44, 48 (S.D.N.Y.1997); *Rankel v. Tracey*, No. 84 Civ. 3412(KMW), 1991 WL 156324, at *7 (S.D.N.Y. Aug. 2, 1991); *Klein v. Eubank*, 87 N.Y.2d 459, 640 N.Y.S.2d 443, 663 N.E.2d 599, 600 (1996).

■ Here, as discussed *supra*, Ballon Stoll has moved to withdraw its representation on satisfactory grounds, and the Court thus grants the motion, since, as discussed above, non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4. *See, e.g., Freund v. Weinstein*, No. 081469(FB)(MDG), 2009 WL 750242, at *1 (E.D.N.Y. Mar. 19, 2009). Although a few courts have suggested that the "good cause" inquiry with respect to a charging lien reflects a higher standard than the "satisfactory reason" required to successfully withdraw as counsel under Local Civil Rule 1.4, *see, e.g., Diarama Trading Co., Inc.*, 2005 WL 1963945, at *3; *Hallmark Capital Corp. v. The Red Rose Collection, Inc.*, No. 96 Civ. 2839(RPP)(AJP), 1997 WL 661146, at *3 (S.D.N.Y. Oct. 21, 1997), in this case, such a potential distinction would not defeat Ballon Stoll's motion because the Court finds that the good cause threshold has been satisfied. The Second Circuit has acknowledged that, under certain circumstances, "[a] client's refusal to pay attorney's fees may constitute 'good cause' to withdraw." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir.2006) (discussing good cause standard in the context of an appeal from a criminal case in the Western District of New York where counsel had been assigned to his client pursuant to the Criminal Justice Act). "In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel." *Id.* In this case, the invoices reflect that plaintiff has failed to pay Ballon Stoll for over two years and admitted that he could not meet the financial obligations under the retainer agreement. Due to the substantial size of Mr. Stair's legal bills and the length of time during which no payment has been made, as well as the other circumstances detailed *supra*, the Court determines that Mr. Stair has deliberately disregarded his financial obligations to Ballon Stoll. Under these circumstances, the Court determines that Ballon Stoll withdrew with good cause.

Accordingly, the Court finds that Ballon Stoll has retained its right to a statutory charging lien for the services rendered on behalf of plaintiffs in this case prior to its withdrawal as counsel. This lien will thus attach to any "verdict, report, determination, decision, judgment or final order" rendered in plaintiffs' favor, if such a favorable result is ultimately achieved by plaintiffs. *See* N.Y. Judiciary Law § 475.

2. Amount of the Charging Lien

■ As for the amount at which the charging lien should be fixed, it is also well settled in New York that absent an express agreement between the attorney and client to the contrary, a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*. *See Skylon Corp. v. Greenberg*, 164 F.3d 619, 619 (2d Cir.1998); *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 602 N.Y.S.2d 788, 622 N.E.2d 288, 290 (1993); *Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 489 N.Y.S.2d 36, 478 N.E.2d 177, 178–79 (1985); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir.1998) ("It is undisputed that it was proper to determine the amount of Butler's § 475 charging lien on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of the Gelmin parties' substitution of new counsel."). The theory of *quantum meruit*, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien. Although a court is not bound by the parties' retainer agreement, it may still use such agreement

as guidance in determining the reasonable value of the services provided. *See McDermott*, 2006 WL 2038452, at *3 (citation omitted).

■ Specifically, in determining a proper award of attorney's fees, the Court may consider " '(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained.' " *Garcia v. Teitler*, No. 04 Civ. 832, 2004 WL 1636982, at *7 (E.D.N.Y. July 22, 2004) (quoting *Casper v. Lew Lieberbaum & Co., Inc.*, 182 F.Supp.2d 342, 346 (S.D.N.Y.2002)), *aff'd*, 443 F.3d 202 (2d Cir.2006).

■ In calculating the reasonable hourly rate, the Second Circuit has instructed:

> the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir.2008) (referring to the factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). The factors that should be considered by the Court include "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill*, 522 F.3d at 184.

■ In addition, the determination of the reasonable value of the services at issue is a matter within the sound discretion of the trial court. *See Sequa Corp.*, 156 F.3d at 149. At bottom, the amount should be "fair" in the equitable sense; the Second Circuit has instructed that "[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair[.]' " *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir.2006) (internal citations omitted).

After careful review of the record and the billing invoices submitted for review, the Court finds that Ballon Stoll is entitled to a charging lien for the reasonable value of the services it has rendered on plaintiffs' behalf that remain unpaid by plaintiffs. Specifically, this includes payment

for the firm's services as reflected in the billing invoices dated March 4, 2008 (for that portion of which remains unpaid), April 1, 2008, May 1, 2008, June 3, 2008, July 2, 2008, August 5, 2008, September 3, 2008, October 4, 2008, November 3, 2008, December 3, 2008, and January 2, 2009, February 3, 2009, May 4, 2009, June 2, 2009, July 2, 2009, August 3, 2009, September 1, 2009, October 2, 2009, December 2, 2009 (excluding those charges from October 26, 2009 forward, as discussed *infra*), subject to a 10% deduction in total hours expended by each attorney and a reduction in the hourly rate for each attorney, as discussed below.

### a. Hours Expended

First, the Court notes that the lien should be fixed to account for services rendered beginning at the time of the action's commencement and not at the time that the firm was retained. The terms of Section 475 explicitly state that an attorney has a lien against his client's cause of action upon commencement of the action. *See* N.Y. Judiciary Law § 745. Here, the action was commenced on September 18, 2007. Indeed, Ballon Stoll does not argue that it is entitled to a charging lien for any hours worked prior to that date. The submitted invoices account for unpaid charges beginning on the invoice dated March 4, 2008.

 The hours actually expended and the rates actually charged are, of course, not dispositive of the amount at which the charging lien should be fixed. With respect to hours, "[i]f a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Spalluto v. Trump Int'l Hotel & Tower,* No. 04 Civ. 7497(RJS) (HBP), 2008 WL

4525372, at *6 (S.D.N.Y. Oct. 2, 2008) (quoting *Santa Fe Natural Tobacco Co. v. Spitzer,* Nos. 00 Civ. 7274(LAP), 00 Civ. 7750(LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)); *see also Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998) ("If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" (internal quotation marks and citation omitted)). In this respect, plaintiffs argue that certain of the charges were excessive or unnecessary.

 As an initial matter, plaintiff argues that "some of the billing was repetitive in that the complaint had to be revised three times." (Letter in Opposition by Theodore Stair dated January 4, 2010, at 9.) Plaintiffs' counsel, in its reply, argues that "revisions to the Complaint were necessitated by the paucity of specific information provided by Mr. Stair. Indeed, this lack of specific information required Mr. Stair to file an amended complaint." (Tristano Affirm. ¶ 4.) After careful *in camera* review of the invoices at issue, the Court finds such invoices describe the work performed on plaintiffs' behalf in sufficient detail. *See, e.g., Spalluto,* 2008 WL 4525372, at *7 ("The invoices set forth the date on which services were performed, the hours spent, and the nature of the work performed for each attorney and the one paralegal. Such a submission meets the evidentiary threshold for the recovery of attorney's fees."); *Boster v. Braccia,* 06 Civ. 4756(JG) (RER), 2007 WL 4287704, at *2 (E.D.N.Y. Dec. 4, 2007) (finding invoices supported award of attorney's fees because they were "sufficiently detailed"); *Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.,* 240 F.Supp.2d 182, 188 (E.D.N.Y. 2002) ("Upon reviewing the billing records submitted by counsel, the court finds that they are adequately detailed to permit the

court to make determinations about the nature of the work performed, and whether the time spent was unnecessary, redundant or excessive."). However, the Court further notes that, with respect to a breakdown of time spent on each item, there was repeated use of block-billing such that the reasonableness of each entry could not be as easily determined. Thus, the Court, in its discretion, has determined that a 10% reduction to billed hours is appropriate in this case. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.,* 629 F.Supp.2d 307, 314 (S.D.N.Y.2009) ("Because the time records here contain some vague entries and block entries that prevent the Court from determining whether the time expended was reasonable ... the Court will deduct a reasonable percentage of the number of hours claimed—in this case 15% .... The Court has used a percentage reduction on the low end of the scale because the overall number of hours sought are reasonable to begin with." (internal citation and quotation marks omitted)); *Spalluto,* 2008 WL 4525372, at *8–9 (applying 15% reduction for substantial use of block-billing and vague time entries); *Molefi v. Oppenheimer Trust,* No. 03 Civ. 5631(FB)(VVP), 2007 WL 538547, at *7–8 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for, *inter alia,* a "substantial amount" of block-billing); *Klimbach v. Spherion Corp.,* 467 F.Supp.2d 323, 332 (W.D.N.Y.2006) (reducing 10% of hours billed because of vagueness and block-billing); *Aiello v. Town of Brookhaven,* 94 Civ. 2622(FB)(WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block-billing); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,* 277 F.Supp.2d 323, 325–26 (S.D.N.Y.2003) (applying 15% reduction for block-billing and excessive time entries). The Court does not view such time as unreasonable in light of the task and the oppositions to the two motions to dismiss prepared by the firm, which were well-written and, in light of the 10% reduction in total hours that the Court has already determined, the Court finds no further reduction in hours expended is necessary.

■ The Court does, however, find it necessary to subtract those hours that the firm spent on its motion to withdraw and on this pending motion. Such activities were not in furtherance of obtaining a favorable judgment on behalf of plaintiffs in this case and are thus not properly the subject of the charging lien. *See, e.g., Cutner & Assocs., P.C. v. Kanbar,* No. 97 Civ.1902(SAS), 1998 WL 104612, at *3 (S.D.N.Y. Feb. 4, 1998) ("I do not believe that Kanbar should be required to pay for time that Cutner spent in making the motion to withdraw as counsel."); *Cass & Sons, Inc. v. Stag's Fuel Oil Co., Inc.,* 148 Misc.2d 640, 561 N.Y.S.2d 519, 522 (Sup. Ct.1990) ("I find and decide that the two motions to withdraw were not made for the benefit of the clients and accordingly, no fee should be allowed for the same. These applications were made for the benefit of the attorneys, so that they would be relieved of their responsibility to remain in the action as well as to have their fees fixed and have judgment entered thereon."); *Trendi Sportswear, Inc. v. Air France,* 146 Misc.2d 111, 549 N.Y.S.2d 561, 563 (Civ.Ct.1989) ("A statutory attorney's lien is a lien only for the value of services rendered and disbursements incurred in the particular action which produced the recovery sought to be charged. In order to be the subject of a lien, the services of the attorney must have aided in bringing about the judgment or award against which the lien is asserted. In the instant case, the services performed by the outgoing attorney to sever the attorney-client relationship with plaintiff and to move for a charging and retaining lien are not part

of any effort or service which will aid in bringing about a judgment or an award in favor of plaintiff in the litigation which the lien is sought to be charged." (internal citation omitted)). The Court will therefore not count those hours billed after October 26, 2009, when the attorney-client relationship was put on notice of termination and the firm stopped working on plaintiffs' behalf with respect to this case.

■■■ In light of the Court's familiarity with this three-year long litigation and the nature and quality of the work undertaken by Ballon Stoll on behalf of plaintiffs, it determines that a charging lien should be fixed to account for 90% of the hours billed to plaintiffs for work done prior to October 26, 2009, as that number of hours billed is reasonable in the Court's view. *See Skylon Corp. v. Greenberg,* 164 F.3d 619, 619 (2d Cir.1998) (affirming district court's determination of the amount of the charging lien and stating, "[t]he district court, which had observed Klepner & Cayea's work first-hand throughout the litigation, found that (1) this had been 'a difficult case' as compared to the general run of litigation, (2) Klepner & Cayea's time spent was reasonable, (3) the nature, extent, and quality of its work was reasonable, and (4) it had obtained 'high-quality results.'"); *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) ("In calculating the number of reasonable hours, the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." (internal quotation marks and citation omitted)). As one court has explained:

> We judge the reasonableness of an attorney's investment of time by what he or she was required to do in order to represent his client in a professional manner. That is determined, in general terms, by looking to what actions the attorney in question reasonably chose to undertake and the amount of time that should have been required to perform them.

*Gumowitz on Behalf of W. Seventy–Ninth Street Assocs. v. Resolution Trust Corp.,* No. 90 Civ. 8083(DAB), 1995 WL 375882, at *2 (S.D.N.Y. June 23, 1995). The Court here has determined that the firm's time was reasonable in light of the actions that were required in order to represent plaintiffs in a professional manner, and thus only a 10% reduction in total hours is appropriate because of the repeated use of block-billing. Thus, although the Court does, in its discretion, use a percentage deduction "'as a practical means of trimming fat from a fee application,'" *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) (quoting *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983)), its determination is that such a deduction should be relatively small in light of the record.

Accordingly, the Court has totaled the hours worked by each attorney of record, as reflected by the invoices, to be discounted by 10% and then multiplied by an appropriate hourly rate for each attorney, as further determined below.

### b. Hourly Rate

■■■ Again, in determining the reasonable amount of the lien, the district court may calculate a "presumptively reasonable" figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate. *See Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994). The reasonable hourly rate should take into account all of the case-specific variables and, as the Second Circuit has made clear, the Court may consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.

1974),[3] in making this determination. Ultimately, the hourly rate "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir.2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118 (2d Cir.2007)).

Also, according to the "forum rule," courts should typically use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115–16 (2d Cir.1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" and the "prevailing community" for these purposes is " 'the district in which the court sits.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) and *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983))). "The Court is also free to rely on its own familiarity with prevailing rates in the District." *Spalluto*, 2008 WL 4525372, at \* 12 (citation omitted). A presumption in favor of applying the forum rule exists, as the Second Circuit articulated in *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir.2009):

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results. The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

*Id.* at 175–76. Ballon Stoll, although it is a firm based in Manhattan, has not overcome this presumption by arguing that higher out-of-district rates must apply or setting forth evidence to "persuasively establish that a reasonable client would have selected out-of-district counsel because do-

---

**3.** The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

ing so would likely (not just possibly) produce a substantially better net result." *Id.*

Because the firm has not provided any evidence of the prevailing market rates in this District, the Court has researched the prevailing market rates in the Eastern District of New York for lawyers in comparable cases involving similar disputes. *See Moreno v. Empire City Subway Co.,* No. 05 Civ. 7768(LMM)(HBP), 2008 WL 793605, at *7 (S.D.N.Y. Mar. 26, 2008) (finding that, where the fee applicant "has submitted no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to plaintiff's, *i.e.* negligence and personal injury cases . . . it is within [the court's] discretion to determine the reasonable hourly rate at which plaintiffs' counsel should be compensated based on [the court's] familiarity with plaintiff's case and the prevailing rates in the Southern District."); *see also Alexander v. Amchem Prods., Inc.,* No. 07 Civ. 6441(RJS), 2008 WL 1700157, at *7 (S.D.N.Y. Apr. 3, 2008) ("Other than Counsel's conclusory assertion that a $600 rate is 'reasonable,' he has failed to submit any case authority or other evidence in support of the reasonableness of the proffered rate. Thus, Counsel's submissions are of little help to the 'case-specific inquiry' that must be conducted by this Court regarding 'the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Farbotko v. Clinton County of N.Y.,* 433 F.3d 204, 209 (2d Cir.2005)). As a result of such research, the Court finds that the hourly rate proffered by Ballon Stoll's attorneys—$95 to $150 per hour for a legal intern, $115 to $195 per hour for a paralegal, $200 to $325 for a junior associate, $250 to $305 per hour for a senior associate, $345 to $365 per hour for a junior partner and $400 to $415 per hour for partners—is higher than the prevailing rate in this District given the particular circumstances of the repre-

sentation in this case. A review of recent cases in this District indicates that the range of appropriate billing rates is $200 to $375 per hour for partners, $100 to $295 per hour for associates, and $70 to $80 for legal assistants or legal interns. *See, e.g., Gesualdi v. Giacomelli Tile Inc.,* No. 09–CV–0711 (JS), 2010 WL 1049262, at *3 (E.D.N.Y. Mar. 18, 2010) ("Given the particular circumstances of the representation in this case, the range of appropriate billing rates is $200–$350 per hour for partners and $100–$295 per hour for associates"); *Melnick v. Press,* No. 06–CV–6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (determining that the range of appropriate billing rates is $200–$375 per hour for partners and $100–$295 per hour for associates); *Moran v. Sasso,* No. 05 Civ. 4716(DRH)(ETB), 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) ("In the Eastern District of New York, reasonable hourly rates have ranged from '$200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.'" (quoting *Cho v. Koam Med. Serv. P. C.,* 524 F.Supp.2d 202, 207 (E.D.N.Y.2007))); *Duverger v. C & C Duplicators, Inc.,* No. 08 Civ. 0721(DRH)(ARL), 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009) ("Overall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants.") (quoting *Cruz v. Henry Modell & Co.,* No. 05 Civ. 1450(AKT), 2008 WL 905351, at *7 (E.D.N.Y. Mar. 31, 2008))); *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.,* No. 06 Civ. 5487(AKT), 2008 WL 4453221, at *6 (E.D.N.Y. Sept. 30, 2008) (same); *Cheesecake Factory Assets Co. LLC v. Phila. Cheese Steak Factory Inc.,* No. 05 Civ. 3243(NGG)(RML), 2008 WL 2510601,

at \*5 (E.D.N.Y. June 20, 2008) ("[R]ecent case law in this circuit has not approved rates over $300 per hour for associates or $150 per hour for paralegals/clerks."); *Guardado v. Precision Fin., Inc.*, No. 04–CV–3309, 2008 WL 822105, at \*5 (E.D.N.Y.2008) (finding $75 hourly rate for legal intern reasonable); *Coated Fabrics Co. v. Mirle Corp.*, No. 06 Civ. 5415, 2008 WL 163598, at \*7 (E.D.N.Y. Jan. 16, 2008) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners, $200 to $250 for senior associates and $100 to $150 for junior associates." (collecting cases)); *Alveranga v. Winston*, No. 04 Civ. 4356(ARR)(CLP), 2007 WL 595069, at \*6–7 (E.D.N.Y. Feb. 22, 2007) ("The Court also agrees with defendants that Ms. Schiff's requested fee rate of $450.00 per hour is higher than the average rate found to be reasonable for a case of this type and a practitioner of her experience in the Eastern District of New York .... Instead, the Court, based on its extensive experience with fee applications, finds that $450.00 per hour is more consistent with the rate being paid to senior attorneys in larger firms for work performed in connection with more complex litigation." (internal citations omitted)); *Comm'n Express Nat'l, Inc. v. Rikhy*, No. CV–03–4050, 2006 WL 385323, at \*6 (E.D.N.Y. Feb. 16, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates ... $200 to $250 for senior associates ... [and] [r]ates for paralegals range from $60 to $75." (citing cases)); *S.E.C. v. Goren*, 272 F.Supp.2d 202, 207 (E.D.N.Y.2003) ("[C]ourts in this district employed, and the Second Circuit upheld, rates of $200 per hour for partners, $135 per hour for associates and $50 per hour for paralegals. These rates were recently confirmed by Judge Nicholas Garaufis, who has recently held that 'the prevalent rate in this district is in the range of $200 and $250 for partners and between $100 to $200 for junior and senior associates.'" (quoting *Rotella v. Bd. of Educ.*, No. 01 Civ. 0434(NGG), 2002 WL 59106, \*2 (E.D.N.Y. Jan. 17, 2002) (additional citations omitted))).

Accordingly, the Court, in the exercise of its discretion, determines that the following rates are appropriate and reasonable in this case: $80 per hour for the work of paralegals David McLeod and Omar Brunson; $80 per hour for the work of interns Arthur Oder and Samuel Rivera; $215 per hour for the work of junior associate Kira Tsiring; $250 per hour for the work of associate Joseph Tristano; $300 per hour for the work of senior associate/junior partner Susan Schneiderman, who performed the bulk of the work on this case, and $350 per hour for the work of partners Marshall B. Bellovin and Howard D. Bader. Based on the evidence gathered regarding the prevailing market rates and due to the nature of the claims at issue and after consideration of all the case-specific factors, the Court finds that rates any higher than these are not warranted and any rates lower than these would not adequately compensate Ballon Stoll for their services, in light of all of the factors. Again, the prevailing hourly rate in this district for senior associates is generally $200 to $250, *Cho*, 524 F.Supp.2d at 207, and the firm has submitted no evidence to justify any departure from these market rates. Moreover, in terms of other *Johnson* factors, the Court has considered them in its discretion and concludes that the above-referenced hourly rates, which are consistent with those prevailing generally in this District, are appropriate in this case. Accordingly, even though the firm seeks to bill Mr. Stair at a higher hourly rate, the Court, while taking these billing rates into consideration, has nonetheless

deemed it appropriate to adjust them downward to $80 per hour, $250 per hour, $300 per hour, and $350 per hour, respectively.

As for the expenses billed to plaintiffs for copies of documents, mailings, investigative and legal research fees, and other expenses, Mr. Stair does not dispute the fees charged on the invoices, and so those fees will also attach to the charging lien, to the extent that they are thus far unpaid and were incurred between the commencement of the litigation and prior to October 26, 2009. *See, e.g., Sequa Corp.,* 156 F.3d at 149–50 (affirming judgment including disbursements); *Hedman, Gibson & Costigan, P.C. v. Tri–Tech Sys. Int'l, Inc.,* No. 92 Civ. 2757(JFK), 1995 WL 555702, at *4 (S.D.N.Y. Sept. 18, 1995) (fixing the value of legal services and disbursements secured by a charging lien).

In sum, the amount of the charging lien against plaintiffs' cause of action in this case will be fixed in the total amount of $37,546.87, representing as follows: (1) 3.51 hours, or 90% of 3.9 hours, billed at the rate of $350 per hour for the services of partner Howard Bader; (2) 16.605 hours, or 90% of 18.45 hours, billed at the rate of $350 per hour for the work of partner Marshall B. Bellovin; (3) 131.22 hours, or 90% of 145.8 hours, billed at the rate of $300 per hour for the work of senior associate/junior partner Susan Schneiderman; (4) 23.04 hours, or 90% of 25.6 hours, billed at the rate of $250 per hour for the work of senior associate Joseph Tristano; (5) 22.86 hours, or 90% of 25.4 hours, billed at the rate of $215 per hour for the work of junior associate Kira Tsiring; (6) 46.62 hours, or 90% of 51.8 hours, billed at the rate of $80 per hour for the work of intern Samuel Rivera; (7) 14.76 hours, or 90% of 16.4 hours, billed at the rate of $80 per hour for the work of intern Arthur Oder; (8) 4.455 hours, or 90% of 4.95 hours, billed at the rate of $80 per hour for the work of paralegal Omar Brunson; (9) 1.8 hours, or 90% of 2.0 hours, billed at the rate of $80 per hour for the services of paralegal David McLeod; (10) a deduction of $25,906.86 for payments already made by the plaintiff; and (11) an addition of the expenses, undisputed by plaintiffs, expended prior to October 26, 2009, that remained unpaid, in the amount of $961.78.

### 3. Motion for a Retaining Lien

■■■■ A discharged attorney is also entitled to a retaining lien on the former client's papers and property that are in the attorney's possession, under New York common law. *See Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir.1991); *see also McDermott v. Great Am. Alliance Ins. Co.,* No. 5:02 Civ. 0607 (NAM/DEP), 2006 WL 2038452, at *2 (N.D.N.Y. July 18, 2006) ("In New York, an attorney who ceases to represent his or her client but has rendered services for which payment has not yet been received has two forms of recourse against non-payment, other than commencement of a plenary action—one derived from the common law [generally referred to as a retaining lien], and the other created by statute [referred to as a charging lien]."). The right to a retaining lien is grounded in common law and is enforced in federal courts unless a specific federal law alters the parties' rights. *See Allstate Ins. Co. v. Nandi,* 258 F.Supp.2d 309, 311 (S.D.N.Y.2003) (citing *Rivkin v. A.J. Hollander & Co.,* No. 95 Civ. 9314, 1996 WL 633217, at *2 (S.D.N.Y. Nov. 1, 1996)). A retaining lien attaches "when the action is commenced and remains in force when an attorney is discharged without cause." *See id.* at 312 (quoting *Casper v. Lew Lieberbaum & Co.,* No. 97 Civ. 3016, 1999 WL 335334, at *8 (S.D.N.Y. May 26, 1999)).

Although an attorney who has been discharged for cause has no right to compensation or to a retaining lien, an attorney who has been discharged without cause is entitled to be paid a fee on a *quantum meruit* basis for the reasonable value of the legal services that were provided. *See Viada v. Osaka Health Spa, Inc.*, No. 04 Civ. 2744, 2005 WL 3481196, at *2 (S.D.N.Y. Dec. 19, 2005) (citing *Gurry v. Glaxo Wellcome, Inc.*, No. 98 Civ. 6243, 2000 WL 1702028, at *1 (S.D.N.Y. Nov. 14, 2000)). When counsel is granted leave to withdraw by the court, the discharge is not for cause. *See Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707(JGK), 2009 WL 1505174, at *1 (S.D.N.Y. May 27, 2009) (citation omitted). Furthermore, "[t]he award of a charging lien does not preclude an attorney from asserting a retaining lien as these remedies are not exclusive but cumulative." *Wankel v. Spodek*, 1 A.D.3d 260, 767 N.Y.S.2d 429, 430 (2003) (quotation omitted).

Here, since Ballon Stoll's leave to withdraw was granted by the Court, the firm's discharge is not for cause. However, the Court must also consider the impact of enforcing the lien on the present litigation. *See Casper*, 1999 WL 335334, at *9. Authorizing a retaining lien will delay the resolution of this case. The plaintiffs have been unable to pay Ballon Stoll's accumulated costs. It is unlikely that they will be able to afford any lien imposed. In addition, the status of new counsel remains uncertain. A lien would only serve to make this situation more difficult. "[W]hen a client has made an unrefuted or uncontroverted showing of 'exigent circumstances,' such as indigence, the court will relegate the outgoing attorney to a charging lien on the proceeds of the action, pursuant to Judiciary Law § 475." *Cohen v. Cohen*, 183 A.D.2d 802, 584 N.Y.S.2d

116, 118 (1992) (finding indigence could relegate the outgoing attorney's retaining lien to a charging lien) (citing *Katsaros v. Katsaros*, 152 A.D.2d 539, 543 N.Y.S.2d 478 (1989) and *Rosen v. Rosen*, 97 A.D.2d 837, 468 N.Y.S.2d 723 (1983)); *Rosen v. Rosen*, 97 A.D.2d 837, 468 N.Y.S.2d 723, 723 (1983) (retention of papers would render near impossible preparation of case for trial by incoming attorney); *Williams v. Hertz Corp.*, 75 A.D.2d 766, 427 N.Y.S.2d 825, 825 (1980) (same). Accordingly, Ballon Stoll's motion for a retaining lien is denied.

### III. CONCLUSION

For the reasons stated herein, the Court grants Ballon Stoll's motion to withdraw. The motion for a charging lien, pursuant to New York Judiciary Law § 745, is also granted. The amount of the charging lien is $37,546.87. Ballon Stoll's motion for a retaining lien is denied.

SO ORDERED.